THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* THE GOLD AND STOCK TELEGRAPH COMPANY, APPELLANT.

*Taxation — amount to be paid by a telegraph company — Sec. 3 of chap. 471 of 1853 was repealed as to the State tax by chapter 361 of 1881.*

Section 3 of chapter 471 of 1853 provides that every telegraph company, " using a line partly within and partly beyond the limits of the State, shall render to the proper officer a true report of the cost to such company of their works within this State; and that the stock of such company, in amount equal to such cost, or the dividends thereof, shall be subject to taxation in the same manner and at the same rate as the stocks or dividends of other companies incorporated by the laws of this State are subject."

*Held,* that this act was impliedly repealed, in so far as the taxes to be raised for State purposes were concerned, by chapter 361 of 1881 and that in computing the taxes to be paid by a telegraph company, under the act of 1881, the provisions contained in the act of 1853 were to be disregarded.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict directed at the circuit.

The action was brought to recover a tax alleged to be due under the provisions of section 3 of chapter 361 of 1881.

*Wager Swayne* and *Matthew Hale*, for the appellant.

*D. O'Brien*, attorney general, for the people, respondent.

LEARNED, P. J.:

The question here involved has recently been examined by Judge HAND, as referee, in the case of the *People* v. *The Western Union Telegraph Company*, and a very careful opinion has been written by him. The amounts involved are large, and both these cases will at once be taken to the Court of Appeals for final decision. Nothing is presented but a question of law, and that is only the question, what did the legislature mean? Or, as the legislature probably had no thought at all on the question raised in this case, being most likely quite ignorant of the existence of the law of 1853, the question is what, under the circumstances, is the fair construction to be given to the Laws of 1880 and 1881, considering that the law of 1853 has not been expressly repealed?

It seems to us, for the reasons thus briefly suggested, that it can hardly be worth while to make any elaborate argument in support of our views. The general rules as to repeal by implication are familiar, and it is needless to cite them. How are they to be applied in the present case?

The statute on which the question arises is chapter 471, Laws 1853, section 3: "Every such company owning or using a line of electric telegraph partly within and partly beyond the limits of this State, shall render to the proper officer a true report of the cost to such company of their works within this State; and the stock of such company, in amount equal to such cost, or the dividends thereof, shall be subject to taxation in the same manner and at the same rate as the stocks or dividends of other companies incorporated by the laws of this State are subject." Observe the words, "shall render to the proper officer," indicating that there was at the time a proper officer to whom the report was to be rendered, and by

whom the stock, " in amount equal to such cost," was to be assessed at that amount.

And the meaning of this provision is seen on looking at 1 Revised Statutes (m. p. 414), section 2, which requires a statement from every corporation to the assessor of the town or ward specifying certain things. The statute above referred to modified or added to the requirement.

Turning now to chapter 654 of the Laws of 1853, we find an act amending the general tax law as to corporations, at 1 Revised Statutes (m. p. 415), section 6 and m. p. 416, sections 9 and 10. This amendment changed the law so that corporations were taxed on their capital and on their surplus fund exceeding ten per cent, after deducting, etc. And if the corporation had not made five per cent on its capital, it could commute for five per cent on its net profits, excepting as to real estate.

Chapter 471, then, above cited, modified this general law in the case of a telegraph company owning or using a line partly within and partly without the State, by limiting the taxation to the costs of the works within the State and the dividends thereof. Probably the reason was that the telegraph poles and wires might possibly be considered real estate in other States, and might, therefore, be taxed as such there. The modification, then, was in harmony with the general tax law in respect to corporations, which excepted from the tax imposed on corporations at their principal office the real estate belonging to them, even within the State, and which imposed the tax on the real estate in the town where it lay. (1 R. S., m. p. 389, § 6.) And we can easily see that the statute in question was consistent with the schemes of taxation then in force, under which there was levied on corporations, as on natural persons, taxes for State, county and town or city purposes.

This system continued until the passage of chapter 542, Laws of 1880, amended by chapter 361, Laws of 1881. This statute was declared to be: " To provide for raising taxes for the use of the State." But section 8 of the act of 1880 declared that while their real estate should continue to be assessed and taxed, the capital and personal property of these corporations should thereafter be exempt from assessment or taxation except as in the act prescribed. This shows that the previously existing system, to which the act of 1853

so appropriately applied, ceased to be in force as to these corporations. It is true that the act of 1881 modified this section 8, and left these corporations liable to taxation as before for other than for State purposes.

The law of 1881 further modified the law of 1880 by inserting in section 3 the words "as a tax upon its corporate franchise or business." These words indicate what is plain from the whole language of the act, that as to State purposes the statute establishes a new system; new in all its plan and detail. Unless there be some imperative reason growing out of the language, we ought not to read into this new system any of the provisions of the old.

But it is argued, and we must admit with force, that the act of 1853 is a general provision applicable to any system which may be established unless specially repealed; that that act makes only the cost of the works within the State "subject to taxation in *the same manner* and at *the same rate* as the stocks," etc.; that for this reason it is only that cost which is to be taxed under the scheme of taxation of 1881.

Now it is plain that the law of 1853 was passed when the old system (as we may call it) was in force for all taxation. It was intended at the time of its passage to apply to and affect laws then in force. And the real question here is whether this new system in regard to taxation for State purposes is one so different in its plan, in its name and its object, that it is not reasonable to think that the exception made by the law of 1853 was intended to apply. It seems to us that this is a matter to be determined from the whole general scope of the statute. The legislature have chosen to call this new system a tax on franchise or business.

Perhaps the phrase, if analyzed, may seem to make a distinction without a difference. But at any rate, in the consideration of the present question, the words are useful to show the intent to make a new plan, wholly separate from, and independent of, the provisions of the old system.

It is argued that the law of 1853, in speaking of a tax upon stock, was a tax upon certain *values* represented by the stock, and that the tax on a franchise or business is still a tax upon *values*, and hence a tax similar to the tax on stock. The question before us, however, has nothing to do with the inquiry, what is the lawful or constitu-

tional subject of taxation; or with any inquiry of a similar character. On the contrary, the question is only whether the act of 1881 shows that it was not restricted by the act of 1853. And, as we have before stated, that question is best solved by seeing whether the new scheme is not so different from the old that the act of 1853, passed when the old was in force and intended to be applicable to the old, is reasonably to be held to apply to the new.

It is hardly to be thought that the legislature which passed the act of 1881 had it specially in mind that the act of 1853 should apply. If they had such a design in view we might justly suppose that, in sections 1 and 3, express and unmistakable language would have been used, making the exception in respect to telegraph companies which the defendants claim.

A general repeal of the act of 1853 would have taken away its benefits from the companies in respect to taxation other than for State purposes. Properly then it remains on the statute book, still applicable, as it would seem, in respect to taxation for county and town purposes, but wholly inapplicable to the new system of raising money for the purposes of the State.

The defendants urge the doctrine that a general law does not, by implication, repeal a prior special law, and they cite as a late decision *McKenna* v. *Edmundstone* (91 N. Y., 231). It will be observed that, in the opinion of the court, it is said that a special and *local* law will not be thus deemed to be repealed. And it is, further said that this comes under the larger rule of inconsistency or repugnancy or clear intention. Now the present case is not one where the question is of *repeal*, but of *application*. Admitting, as above suggested, that so far as taxation for county and town purposes is concerned, the act of 1853 is in force, the question is whether it applies or was intended to apply to the system established by the acts of 1880 and 1881. Is it not plain that the scheme therein adopted was to be uniform in its application to all corporations named? We think it would be inconsistent to construe the scheme so as to make the exception for telegraph companies, which the defendants claim.

Another question raised is that interest cannot be recovered. Under the ordinary mode for the collection of taxes prescribed by the Revised Statutes, the collector (or, as it may be in cities, the marshal)

is an officer empowered to enforce the payment by levy, on distress and sale, as the language sometimes is.   The collector is to call and demand payment.   The amount which the officer is then empowered to collect by levy is specified by statute; being sometimes the tax with twelve per cent interest; sometimes the tax with five per cent fees, etc.   And we need not contest the argument of the defendant that the collector can enforce only such amount as is specially stated in the statute.   But the present statute is quite different.   Section 4 of the act of 1881 makes it the duty of the corporation to transmit the amount of the tax to the treasury within fifteen days after the first of January.   Thus an affirmative duty of payment at a certain time is imposed.   Then section 9 authorizes an action for the tax thus required to be paid.   Thus the statute imposes an obligation to pay at a certain time and gives an action for the non-payment.   This is quite different from the case of ordinary taxes where the tax is assessed and the process to collect is at once issued; or (in the case of some cities) issued after a certain time allowed for payment. The question here is not how much a collector of taxes may collect under his warrant.   The question is, what obligation or liability has the statute imposed on the corporation to be performed in respect to the State?   The statute says the corporation *shall pay* so much money on such a day; and, if it does not, the State may sue.   We see no reason why that obligation to pay on a certain day should not, like other obligations to pay money carry interest for non-payment.   The ten per cent penalty imposed by section 3 applies to a failure to furnish the report as well as to a failure to pay, and is to be collected with the tax.   No interest is recovered on the penalty. We do not think that this penalty takes the place of, or deprives the State of, interest on the tax.

For the reasons thus given, and for those very fully set forth in the opinion of Judge HAND, the judgment is affirmed, with costs.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment affirmed, with costs.